UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREEM TILLERY,<br><br>           Plaintiff,<br><br>v.<br><br>PO DEBRA RODREGUEZ, PO KILLIMET, PO JOSEPH DEVLIN, PO ARGAST, and PO MILLER,<br><br>           Defendants. | Civil Action No.<br><br>14-6685 (SDW) (LDW)<br><br><br>**REPORT AND RECOMMENDATION** |

**<u>LEDA DUNN WETTRE, United States Magistrate Judge</u>**

Before the Court is defendants' motion to enforce a settlement that was reached with plaintiff Kareem Tillery at the conclusion of a settlement conference before the Court on October 23, 2019. (ECF Nos. 111, 112, 116). Plaintiff filed opposition to the motion *pro se*. (ECF No. 115). United States District Judge Susan D. Wigenton referred the motion to the undersigned for a Report and Recommendation. Having considered the parties' written submissions on the motion, and for good cause shown, this Court recommends that defendants' motion to enforce the settlement be **GRANTED**.

## I.  BACKGROUND

Plaintiff, who has been incarcerated during the pendency of this case, filed this action *pro se* in October 2014, contending under 42 U.S.C. § 1983 that defendants violated his civil rights during his arrest and detention by Union Township Police Officers on February 12, 2014. (ECF No. 1). During discovery, plaintiff moved for appointment of *pro bono* counsel to represent him. (ECF No. 60). Crediting plaintiff's assertion that his ability to view and utilize for this action a videorecording of his interaction with Union Police was hampered by his incarceration (*see id*.),

the Court granted his motion for appointment of *pro bono* counsel and subsequently appointed counsel from Sills Cummis & Gross PC to represent plaintiff in this action. (ECF No. 67, 75).

The Court held a settlement conference on October 23, 2019. (ECF No. 98). Plaintiff participated in the conference telephonically due to his incarceration, but his *pro bono* counsel was physically present for the conference. (*See* ECF 105 at 3-4). After affording plaintiff ample time to speak privately with his counsel and also with the undersigned, plaintiff decided to accept defendants' offer to pay him $45,000.00 in full and final settlement of his claims.

Plaintiff's decision to accept defendants' offer was memorialized on the record at the conclusion of the settlement conference, with his counsel and defendants' counsel present in the courtroom and plaintiff participating by telephone. The following colloquy between the Court and plaintiff took place on the record:

> THE COURT: Okay. Good morning. We are on the record in Kareem Tillery versus Debra Rodreguez and other defendants, 14-CV-6685.
>
> So, first, let me ask, Mr. Tillery, are you on the phone, sir?
>
> MR. TILLERY: Yes.
>
> THE COURT: Okay. Great. And we have – so on the record means we're not tape-recording everything that's said in the courtroom by me and by the lawyers and by you. So I'm going to ask the lawyers to please give their appearances starting with plaintiff's attorney.
>
> MR. LUKSENBERG: . . . . Steven Luksenberg for the plaintiff.
>
> [Appearances then taken from defendants' counsel].
>
> THE COURT: Okay. So that's all the attorneys. And thank you for entering your appearances. So I just want to – we've been having a settlement conference this morning. Mr. Tillery, as we know is incarcerated and – but we've had him – we've asked for him to get access to a telephone, and he's been speaking with me and with his attorney, Mr. Luksenberg.
>
> Is that correct, Mr. Tillery?

MR. TILLERY: Yes.

THE COURT: Okay. And then I've also been speaking with the defendants' counsel, and we've been trying to reach a settlement.

And my understanding is that a settlement has been reached whereby -- we'll go through some terms, but essentially the defendant – well, the Township of Union on behalf of all the defendants will pay Mr. Tillery $45,000 in full and final settlement of his claims in this case.

So far so good, Mr. Tillery?

MR. TILLERY: Yes.

THE COURT: Okay. So let me go through a couple of things which happens every time a settlement's reached with a public entity. . . .

[Discussion with defense counsel of settlement approval process].

THE COURT: Okay. So, in other words, Mr. Tillery, we've got to get two approvals: the Joint Insurance Fund board and then the town probably has to do some kind of resolution. . . . So I did not discuss that with you when we were talking together about a settlement.

Does that change your mind in any way about the settlement?

MR. TILLERY: No.

THE COURT: No?

MR. TILLERY: No.

THE COURT: . . . .

So you expect that Mr. Tillery's lawyer will get the funds within 60 days. Yes?

MR. ANTONELLI: Yes. I have no reason to think that we would not.

THE COURT: Okay. Is that acceptable, Mr. Tillery?

MR. TILLERY: Yes.

THE COURT: Okay. Great. All right. So let me just ask you a few questions. Do you realize that by entering into this settlement, you're ending your lawsuit once and for all?

MR. TILLERY: Yes.

THE COURT: Okay. That means, as part of the settlement, you'll be releasing your claims against any of the defendants in the case and any defendants you could have sued based upon the same events that happened that evening. Do you understand that?

MR. TILLERY: Yes.

THE COURT: Okay. So the case will end. There won't be a trial, if the settlement is approved. And you cannot reinstate the case or sue again based on the same facts. Do you understand that?

MR. TILLERY: Yes.

THE COURT: Okay. Do you have any questions you want to ask me or your lawyer about the settlement?

MR. TILLERY: No.

THE COURT: Okay. And, as you know, we discussed it earlier, I granted your motion to appoint you free counsel. And you've had the firm – a couple of different lawyers at the same firm of Sills Cummis representing you.

Have you been satisfied with their representation?

MR. TILLERY: Yes.

THE COURT: Yes. Okay. And I can tell you they've done a good job in front of the Court as well. They've been very vigorous on your behalf. So I'm glad that worked out. . . .

MR. ANTONELLI: Judge, if I may, well, I think it's understood implicit, obviously, the settlement of $45,000 satisfied all claims including attorneys' fees.

THE COURT: Oh. Okay. Do you understand that, Mr. Tillery? $45,000 is the all-in number. That's the total number.

MR. TILLERY: All right.

THE COURT: Okay? All right. Very good. So you accept and agree with the settlement. Is that correct, Mr. Tillery?

MR. TILLERY: Yes.

>THE COURT: Okay. Is that – and I'll ask the same question of your lawyer. Do you have any objection to the settlement on Mr. Tillery's behalf?
>
>MR. LUKSENBERG: No, objection, Your Honor.
>
>[Defendants' counsel's consent to the settlement was then confirmed].
>
>THE COURT: Okay. I'm satisfied that this is a fair settlement and that everyone is knowingly entering into it. And so I am approving the settlement.
>
>Thank you, everyone.
>
>And thank you, Mr. Tillery. And good luck to you.
>
>MR. TILLERY: Thank you.

(ECF No. 105 at 3-10).

Less than a week after this memorialization of the parties' settlement, plaintiff sent a *pro se* letter to the Court to inform it that he would "be declining the settlement offer that we discussed at length over the phone on Wednesday 23rd, 2019." (ECF No. 100). Plaintiff explained, "I made a grave mistake by settling out to the forty-five thousand dollars" because "the Defendants were never reprimanded for their egregious actions against me" and "I have medical problems which will take more than a mere forty-five thousand dollars to take care of." (*Id.*)

As a result of plaintiff's sending this letter to the Court without conferring with his *pro bono* counsel, and based on disagreements that then developed between Mr. Tillery and that counsel, his *pro bono* counsel moved to withdraw from the representation. (ECF No. 106-2 ¶¶ 12-13). The Court granted counsel's motion to withdraw on January 2, 2020. (ECF No. 109). Defendants thereafter filed the instant motion to enforce settlement, which plaintiff has opposed *pro se*. (ECF Nos. 111, 115). The Court now addresses the motion.

5

## II.     ANALYSIS

Defendants move to enforce the settlement reached on the record in Court on October 23, 2019. Plaintiff opposes the motion on the grounds that he should not be bound by the settlement to which he agreed on the record because he was under stress and on medication at the time he accepted defendants' settlement offer. After briefly reviewing the applicable legal standards, the Court first addresses whether an enforceable settlement was reached on October 23, 2019 and, second, whether plaintiff has demonstrated that he lacked sufficient mental capacity to be bound by that agreement.

### A. Legal Standards

In addressing the motion to enforce, the Court notes that such a motion is generally addressed under the same standard as a motion for summary judgment. *Natale v. E. Coast Salon Servs., Inc.*, Civ. No. 13-1254 (NLH), 2016 WL 659722, at *2 (D.N.J. Feb. 17, 2016); *Leonard v. Univ. of Del.*, 204 F. Supp. 2d 784, 786 (D. Del. 2002), *aff'd*, 80 F. App'x 286 (3d Cir. 2003). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) ("[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

A settlement agreement is a contract, the enforcement of which is governed by state law, and therefore the instant motion will be analyzed under New Jersey law. *See United States v. Struble*, 489 F. App'x 599, 602 (3d Cir. 2012); *Excelsior Insurance Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 349 (D.N.J. 1996). New Jersey has a "strong policy of enforcing settlements…based upon the notion that the parties to a dispute are in the best position to determine

how to resolve a contested matter." *Brundage v. Estate of Carambio*, 195 N.J. 575, 600–01 (2008). Consequently, "our courts have refused to vacate final settlements absent compelling circumstances" and "require 'clear and convincing proof' that the agreement should be vacated." *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) (citing *DeCaro v. DeCaro*, 13 N.J. 36, 42 (1953)). A settlement agreement, like any other contract, may be set aside when one of the parties is not sufficiently competent to "comprehend the business in which he is engaging." *Jennings v. Reed*, 381 N.J. Super. 217, 227 (App. Div. 2005) (quoting *Eaton v. Eaton*, 37 N.J.L. 108, 113 (1874)).

**1. Whether An Enforceable Settlement Was Reached**

The Court first addresses whether the settlement reached on the record before the Court on October 23, 2019 is enforceable. An enforceable contract arises from offer, acceptance, and consideration. *Creek Ranch, Inc. v. New Jersey Turnpike Authority*, 75 N.J. 421 (1978). The parties must agree and manifest an intention to be bound by essential terms that are sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992). Here, defendants clearly communicated that they would pay plaintiff the sum certain of $45,000 in exchange for his release of all claims in this action. (ECF No. 105 at 4, 9). Plaintiff, assisted by counsel, acknowledged that he understood the offer and expressed clearly his acceptance of it. (*Id.* at 4, 6-9). As there was a meeting of the minds as to sufficiently definite terms, supported by consideration, the agreement on the record on October 23, 2019 constituted a binding agreement to settle this action.

**2. Whether Plaintiff Has Demonstrated Lack of Capacity To Contract**

Having concluded that a binding settlement was reached, the burden is on plaintiff, as the party seeking to vacate the settlement agreement, to show that he lacked the ability to understand

the nature and effect of the October 23, 2019 settlement at the time he entered into it. *See Jennings*, 381 N.J. Super. at 227. The longstanding rule is that "where there is not the mental capacity to comprehend and understand, there is not the capacity to make a valid contract." *Wolkoff v. Villane*, 288 N.J. Super. 282, 287 (App. Div. 1996) (internal quotation omitted). The issue before the Court is therefore whether plaintiff proffers sufficient evidence to create a genuine dispute as to whether he lacked the capacity to contract when he agreed to the settlement placed on the record on October 23, 2019.

The Court finds that plaintiff fails to present any competent evidence that he lacked the requisite mental capacity to agree to the settlement. As an initial matter, plaintiff does not even claim, much less submit proofs to support, that he lacked the mental ability at the time of the hearing to understand that he was entering into a binding settlement agreement. He asserts only that "[t]he combination of [taking a medication called] Meloxicam and the missing property [that he claimed belonged to him] rendered Plaintiff incompetent to make any type of an agreement at the time of the settlement agreement between Plaintiff and Defendants." (ECF No. 115 at 4-5). But plaintiff's "proofs" are nothing more than these conclusory assertions in his brief and the submission of a copy of a prescription label for an anti-inflammatory medication. (ECF No. 115-1, Exh. A). He submits no sworn statement that he had even taken the claimed medication on the date in question nor, more importantly, that taking such medication rendered him unable to comprehend that he was entering into an agreement. *See Jennings*, 381 N.J. Super. at 230 (holding doctor's opinion that plaintiff "suffered anxiety and emotional trauma due to a longstanding medical condition" did not establish that plaintiff was "unable to comprehend the nature and extent of his acts"). Moreover, though plaintiff submits what appears to be an internet printout listing the side effects of Meloxicam, none of the possible side effects listed appears to bear on one's mental

capacity. (*See* ECF No. 115-1, Exh. B). In sum, plaintiff submits no evidence to support an incapacity argument.

Moreover, plaintiff's present assertions that he lacked the capacity to understand the settlement contradicts the statements in his own letter to the Court of October 28, 2019. In that letter, he expressed what is commonly known as "buyer's remorse" in having accepted a settlement that he subsequently came to view as less favorable than he desired. Far from stating that he had not had the capacity to understand the settlement reached just days before, he characterized his acceptance of it as a "a grave mistake" in that defendants' had not been "reprimanded" as part of the settlement and because he anticipated that his "medical problems . . . will take more than a mere forty-five thousand dollars to take care of." (ECF No. 100). But plaintiff's belated change of mind as to the value of his case is not what governs this motion, where there must be "clear and convincing proof" that the settlement agreement should be vacated. *See Nolan by Nolan*, 120 NJ. at 472; *see also Jennings*, 381 N.J. Super. at 232 (finding that plaintiffs failed to present any competent evidence of a lack of mental capacity and noting that second thoughts are entitled to no weight as against the strong public policy in favor of settlements).

Finally, the record reflects that plaintiff expressed his assent to the settlement at least eight times during the hearing in which the Court explained the settlement and its ramifications to him. (*See* ECF No. 105). He never equivocated in expressing his understanding and acceptance of the settlement. To the extent that he faults the Court for not affirmatively inquiring into whether he was taking medications, that criticism is misplaced. It was not incumbent upon the undersigned to probe his capacity on the record after the Court had engaged in direct conversations with plaintiff during the immediately preceding settlement conference and found him alert, intelligent and engaged in assessment of defendants' settlement offer. *See Jones v. U.S. Dep't of Educ.*, 693 F.

9

App'x 107 (3d Cir. 2017) (affirming trial court's denial of application to set aside settlement agreement where Magistrate Judge was personally able to observe and assess party's responsiveness, demeanor, and ability to comprehend terms of settlement).

In sum, plaintiff proffers nothing to demonstrate he lacked competence to enter the settlement placed on the record before the Court. Plaintiff's statement on the record on October 23, 2019 that he understood and agreed to the settlement is uncontroverted by any competent proofs to the contrary.[1] For these reasons, the undersigned respectfully recommends that the Court find that an enforceable settlement was reached between the parties.

---

[1] For the same reason, no evidentiary hearing is required to further delve into plaintiff's purported lack of mental capacity to enter into the settlement. *See Amatuzzo v. Kozmiuk*, 305 N.J. Super. 469, 474–75 (App. Div. 1997) (reciting standard that on disputed motion to enforce settlement, as on motion for summary judgment, hearing not required if "the available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the judge, as a rational factfinder, to resolve the disputed factual issues in favor of the non-moving party") (citing *Brill v. Guardian Life Ins. Co.*, 142 N.J. 520, 540 (1995)); *Alexander v. New Jersey Dep't of Transp.*, Civ. No. 11-3348 (PGS), 2014 WL 5823168, at *5 (D.N.J. Nov. 10, 2014) (concluding that an evidentiary hearing on motion to enforce settlement was obviated in part due to the Magistrate Judge's personal involvement and plaintiff's direct participation in settlement discussions with counsel and Court).

### III. CONCLUSION

For the foregoing reasons, the Court recommends that defendants' motion to enforce the settlement be **GRANTED**. Defendants' counsel shall serve copies of this Report and Recommendation by overnight and regular mail upon plaintiff within five (5) business days and shall file proof of service on the Court's docket. The parties are hereby advised that, pursuant to Fed. R. Civ. P. 73(b)(2), they have 14 days after being served with a copy of this Report and Recommendation to serve and file specific written objections to United States District Judge Susan D. Wigenton.

Dated: April 28, 2020

*s/ Leda Dunn Wettre*
Hon. Leda Dunn Wettre
United States Magistrate Judge

Original: Clerk of the Court
cc: Hon. Susan D. Wigenton, U.S.D.J.
All Parties